Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505
Courtesy copy: clericalassistant.nazaryan@gmail.com

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>HOVHANNES NAZARYAN<br><br>Debtor.<br><br>UNITED STATES TRUSTEE, REGION 16,<br><br>Plaintiff,<br><br>vs.<br><br>HOVHANNES NAZARYAN, Pro Se,<br><br>Defendant | Case No.: 1:25-bk-10617-MB<br><br>Adv. Proc. No.: 1:25-ap-01058-MB<br><br>Chapter 7<br><br>Hon. Martin R. Barash<br>[LBR 9013-1(c), (d); F 9013-1.1]<br>Hearing Date: November 19, 2026<br>Time: 2:30 p.m.<br>Courtroom: 303<br>Place: United States Bankruptcy Court<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367<br><br>NOTICE OF MOTION AND HEARING ON DEBTOR'S MOTION TO SET ASIDE DEFAULT |

TO: United States Trustee, Region 16, and counsel of record;
Nancy Hoffmeier Zamora, Chapter 7 Trustee;
and all other parties entitled to notice:

PLEASE TAKE NOTICE that on **November 19, 2026, at 2:30 p.m.**, in Courtroom 303 of the United States Bankruptcy Court, 21041 Burbank Boulevard, Woodland Hills, California 91367, before the Honorable Martin R. Barash, Defendant Hovhannes Nazaryan ("Movant") will move the Court for an order setting aside the default entered against him on December 9, 2025, in this adversary proceeding.

The Motion is made under Federal Rule of Bankruptcy Procedure 7055 (incorporating Fed. R. Civ. P. 55(c)) and Federal Rule of Bankruptcy Procedure 9024 (incorporating Fed. R. Civ. P. 60(b)), on the grounds of excusable neglect and meritorious defenses. The Motion, the Declaration of Hovhannes Nazaryan, and the supporting exhibits are served and filed with this Notice.

**Your rights may be affected.** Read these papers carefully. If you have a lawyer, discuss them with your lawyer.

**Deadline for opposition.** This Motion is heard on regular notice under LBR 9013-1. If you oppose the Motion, you must file a written response with the Court and serve it on Movant at the address above **no later than fourteen (14) days before the hearing date** (that is, no later than **November 5, 2026**). See LBR 9013-1(f).

**Failure to oppose.** If you do not file and serve a timely written response, the Court may treat your failure as consent to the relief requested and may grant the Motion without further notice or hearing.

**Appearance.** Hearings before Judge Barash are held in Courtroom 303. Parties may appear in person or remotely by ZoomGov audio/video. ZoomGov connection information for this hearing date is posted on Judge Barash's public calendar:

http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=MB

As of the date of this Notice, Movant is incarcerated at FCI Texarkana Satellite Prison Camp. His projected transfer from camp is September 28, 2026, which may be to a residential reentry / halfway house. Movant does not yet know whether that facility will permit him to appear in person on November 19, 2026. He will appear in person if authorized, or by ZoomGov.

Filed at the direction of Hovhannes Nazaryan, incarcerated at FCI Texarkana and appearing pro se. **His original ink signatures are on the Motion and Declaration attached.**

Movant is incarcerated and appearing without counsel. This Notice should be construed accordingly.

Dated: September 21, 2026

Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br>HOVHANNES NAZARYAN<br>Debtor.<br><br>UNITED STATES TRUSTEE, REGION 16,<br>Plaintiff,<br>vs.<br>HOVHANNES NAZARYAN, Pro Se,<br>Defendant | Case No.: 1:25-bk-10617-MB<br>Adv. Proc. No.: 1:25-ap-01058-MB<br>Chapter 7<br>Hon. Martin R. Barash<br><br>DEBTOR'S MOTION TO SET ASIDE DEFAULT |

TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; THE CHAPTER 7 TRUSTEE NANCY HOFFMEIER ZAMORA; AND ALL PARTIES IN INTEREST:

**DEBTOR'S MOTION TO SET ASIDE DEFAULT**

Debtor and Defendant Hovhannes Nazaryan, appearing pro se, respectfully moves this Court for an order setting aside the default entered against him on December 9, 2025.

This motion is brought pursuant to Federal Rule of Bankruptcy Procedure 7055 (incorporating Fed. R. Civ. P. 55(c)) and Federal Rule of Bankruptcy Procedure 9024 (incorporating Fed. R. Civ. P. 60(b)), on the grounds of excusable neglect and the existence of meritorious defenses.

**EXHIBIT LIST**

The following exhibits are attached in support of this Motion:

**Exhibit A** – Emails Between Chapter 7 Trustee Nancy Zamora and Anita Khachikyan (April 18 – May 11, 2025)

**Exhibit B** – Documents and Correspondence Related to April 17, 2025 Lockout of Occupants and Subsequent Eviction Notices

**Exhibit C –** Coldwater Canyon Sale and Restitution Payment Documents

**Exhibit D** – Chapter 7 Trustee's Final Account and Distribution Report (Docket 144), pg.3

**Exhibit E** – Motion to Dismiss Chapter 7 Case (Docket 69), page 4

**Exhibit F** – Complaint Against Artur Nazaryan (1:25-ap-01025-MB, filed April 20, 2025), pages 3–4 only (Joint Tenancy Ownership)

**I. INTRODUCTION**

Debtor Hovhannes Nazaryan appears in this matter pro se. Courts generally construe pro se filings liberally and hold pro se litigants to less stringent standards than attorneys. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). Debtor respectfully requests that this Court afford his filings such liberal construction.

The default was entered after Debtor, who remains incarcerated, was unable to meaningfully participate in this adversary proceeding. His inability to respond resulted from his ongoing incarceration, extremely limited communication with prior counsel, and reasonable distrust of Chapter 7 Trustee Nancy Zamora. That distrust arose in significant part from the Trustee's unilateral lockout of the occupants of the Calabasas property on April 17, 2025, without prior notice and despite knowing Debtor was incarcerated. Debtor has meritorious defenses to the claims brought under 11 U.S.C. § 727 and should be permitted to

defend this case on the merits.

**II. FACTUAL BACKGROUND**

1. Debtor has been incarcerated since before the filing of this bankruptcy case and remains incarcerated today.
2. On April 17, 2025, Chapter 7 Trustee Nancy Zamora took aggressive unilateral action by removing Ani Verdiyan and Zarik Minasyan from the guest list and deactivating their transponders, thereby locking them out of the Calabasas property without prior notice. At the time, these individuals had authorized access to the property through the gated community's guest list. Trustee Zamora knew or should have known that they were residing at the property with Debtor's permission, particularly since Debtor was incarcerated and no eviction of Debtor or the occupants had occurred. This unilateral lockout — executed without any prior notice or inquiry into whether the individuals on the guest list were actually living there — reasonably caused Debtor to distrust the Trustee and made him unwilling to communicate or cooperate with her. The relevant correspondence confirming the lockout is attached as **Exhibit B**.
3. In the days following the April 17 lockout, Trustee Zamora continued to send demands to Debtor's counsel. On April 18, 2025, she sent multiple emails requesting photo identification, airline tickets, utility bills, and confirmation that the occupants would sign certain forms (attached as part of **Exhibit A**).
4. Notably, formal notices regarding the property were only issued after the lockout had already taken place. On or about April 17, 2025, a Thirty-Day Notice of Termination of Occupancy was served, followed on April 22, 2025 by a Notice of Belief of Abandonment that dramatically shortened the deadline. These notices were issued despite the fact that the occupants had already been locked out days earlier, raising questions about the necessity and appropriateness of the initial unilateral lockout. The relevant notices are attached as part of **Exhibit B**.
5. Trustee Zamora's actions constituted improper self-help measures. Rather than pursuing a formal unlawful detainer action or obtaining court authorization, she unilaterally removed the occupants' access to the property and then conditioned their ability to retrieve belongings or re-enter on providing personal identification, travel documents, and signing forms relinquishing possession. In correspondence, she expressly stated that she required "assurances" before allowing access. These tactics were coercive in nature. No eviction proceeding had been initiated or completed against Debtor or the occupants at the time these

actions were taken, and such conduct exposed the bankruptcy estate to potential civil liability for improper self-help eviction tactics.

6. This course of conduct — improperly locking out individuals who had been residing at the property with Debtor's permission, while he remained incarcerated and unable to protect his interests — understandably caused Debtor to reasonably distrust Trustee Zamora and made him unwilling to communicate or cooperate with her.

7. At the time of the April 17, 2025 lockout, Artur Nazaryan held a 50% ownership interest in the Real Property as a joint tenant with Debtor. The Trustee's unilateral removal of authorized occupants without notice or process therefore interfered not only with Debtor's rights but also with the co-ownership rights of Artur Nazaryan, who was not a party to the bankruptcy case and had not consented to any such action. This is further confirmed by the Complaint for Sale of Real Property filed by Trustee Zamora against Artur Nazaryan just three days later on April 20, 2025 (attached as **Exhibit F**, pages 3-4), in which she expressly stated that Artur held title to the Real Property as a joint tenant with Debtor.

8. On or about May 1, 2025, Chapter 7 Trustee Nancy Zamora sent a lengthy list of document requests to Debtor's then-counsel (attached as part of **Exhibit A**). Many of these requests were extremely broad, seeking five or more years of tax returns, contact information for all attorneys and realtors since 2015, and detailed lists of personal property and transfers going back several years.

9. Around this time, counsel had at most sent signing documents related to the bankruptcy case. Debtor did not receive substantive explanations of the Trustee's demands or their urgency. As Nazaryan's own counsel previously represented to this Court, "Due to his incarceration, Debtor has had extremely limited access to documents and significantly restricted communication with counsel. This has impaired Debtor's ability to meaningfully participate in the administration of the estate." (Dkt. No. 68, 1:25-bk-10617-MB, attached as **Exhibit E**).

10. As a result of his ongoing incarceration, the severely limited communication with counsel, and the reasonable distrust of Trustee Zamora caused by her improper self-help lockout and coercive demands, Debtor was unable to appear at the 341(a) meeting or meaningfully respond to the Trustee's requests.

11. On May 11, 2025, Trustee Zamora sent a specific demand regarding the Coldwater Canyon property (attached as part of **Exhibit A**). However, due to his incarceration and limited communication with counsel, Debtor

was not in a position to fully appreciate or respond to these demands in a timely manner.

12. The Coldwater Canyon was sold on January 2, 2025, for $1,980,000. From the sale proceeds, $25,000 was paid directly to the United States in partial satisfaction of the restitution lien. This payment was made pursuant to the Court's July 3, 2024 sentencing order in United States v. Hovhannes Nazaryan, Case No. 2:22-cr-00041-JAK, which required full payment of $1,289,264.94 in restitution within 120 days and held Hovhannes Nazaryan jointly and severally liable with Artur Nazaryan. Prior to the sale, on October 2, 2024, Assistant United States Attorney Robert Lester expressly confirmed that the government would accept $25,000 in exchange for a partial release of the restitution lien on the Coldwater Canyon property. The attached documents (**Exhibit C**) confirm both the government's knowledge of the property and its acceptance of the $25,000 payment from the sale proceeds.

13. Trustee Zamora possessed substantial independent knowledge of the estate's assets at the Calabasas property. She retained a luxury real estate broker, directed agents who physically accessed the residence, independently obtained Coldwater Canyon escrow and title records, and had available Zillow photographs showing the condition and contents of the home. Notwithstanding this knowledge, the Trustee's Final Account (Exhibit E) reflects that the estate recovered only $1,000 for all "Household Goods." These facts demonstrate that the Trustee was fully aware of, and administered, the personal property located at the residence.

## III. LEGAL ARGUMENT

### A. Excusable Neglect Exists Under Rule 60(b)(1)

Courts consider four factors when evaluating excusable neglect: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

Here, all factors weigh in favor of relief:

**Reason for delay**: Debtor's ongoing incarceration severely limited his ability to monitor the docket, communicate with counsel, and respond to pleadings. As Debtor's prior counsel previously represented to this Court, incarceration resulted in "extremely limited access to documents and significantly restricted communication with counsel," which impaired his ability to meaningfully participate. Around the same

period, counsel provided little more than signing documents and did not give substantive explanations of the Trustee's demands. Compounding these barriers, on April 17, 2025 Trustee Zamora locked the occupants out of the Calabasas property without prior notice and conditioned any re-access on the signing of documents and production of information. This coercive self-help action, taken while Debtor was incarcerated, reasonably caused him to distrust the Trustee and made him unwilling to engage with her. As a pro se litigant under these circumstances, Debtor respectfully requests that the Court construe his filings and situation liberally.

**Good faith**: Debtor's distrust of Trustee Zamora was reasonable. On April 17, 2025, while Debtor was incarcerated, the Trustee unilaterally locked authorized occupants out of the Calabasas property without prior notice and without any eviction having occurred. That self-help action, combined with subsequent broad and coercive document demands, caused Debtor to reasonably question the Trustee's even-handedness. This distrust was further justified by the Trustee's broader pattern of conduct, including entering into a limited $120,000 settlement with one creditor that transferred valuable estate interests in the Real Property while providing minimal benefit to the estate as a whole, followed by subsequent aggressive actions against co-owner Artur Nazaryan. Shortly thereafter, the property was listed for substantially more than the value effectively realized by the estate. These actions reflect unexplained and seemingly preferential treatment of one creditor at the expense of maximizing value for the estate and treating co-owners fairly. Debtor's resulting unwillingness to communicate or cooperate was not an attempt to manipulate the bankruptcy process, but a reasonable response to that pattern of unilateral and preferential conduct while he was incarcerated and unable to protect his interests.

**Prejudice**: The United States Trustee will suffer little prejudice if the default is set aside. The Trustee has already independently obtained significant information about the estate through her own investigation, document demands, and administration of the property. Setting aside the default will simply allow the Court to decide the § 727 claims on the merits rather than by default.

**Length of delay**: While default was entered in December 2025, Debtor has acted promptly once able to obtain third-party clerical assistance in preparing this motion.

**B. Debtor Has Meritorious Defenses**

Debtor has colorable defenses to the § 727 claims, including but not limited to:

- The Trustee already possessed substantial independent knowledge of the estate's assets and transactions. She retained a luxury real estate broker, directed agents who physically accessed the Calabasas property, obtained escrow and title records, and had available Zillow photographs of the home's contents. These facts undermine any claim that Debtor's limited cooperation prevented proper administration of the estate or constituted concealment.
- The Coldwater Canyon sale was conducted with the advice of counsel. The United States, which held a restitution lien on the property, had full knowledge of the sale and received $25,000 from the proceeds in partial satisfaction of its lien. The sale was also undertaken while the property faced active foreclosure risk. These facts undercut any allegation of fraudulent transfer, concealment, or false oath related to that transaction.
- Any alleged non-cooperation must be viewed in the context of Debtor's ongoing incarceration, severely limited communication with counsel, and Trustee Zamora's unilateral lockout of the Calabasas property on April 17, 2025, without prior notice and without any lawful eviction process. That conduct reasonably caused Debtor to distrust the Trustee and impaired his ability to respond.

These defenses are sufficient to meet the low threshold required to set aside a default.

## V. CONCLUSION

For the foregoing reasons, Debtor respectfully requests that this Court:

1. Set aside the default entered on December 9, 2025;
2. Grant such other and further relief as the Court deems just and proper

Dated this 8th day of September, 2026.

Sincerely and respectfully,

[signature]

Hovhannes Nazaryan, Pro Se

Hovhannes Nazaryan
Debtor, Pro Se
Register No. 86590-509
FCI Texarkana Satellite Camp
P.O. Box 9300
Texarkana, TX 75505

Hovhannes Nazaryan, Pro Se
Reg. No. 86590-509
FCI Texarkana
Satellite Prison Camp
PO BOX 9300
Texarkana, TX 75505

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br>HOVHANNES NAZARYAN<br>Debtor.<br><br>UNITED STATES TRUSTEE, REGION 16,<br>Plaintiff,<br><br>vs.<br><br>HOVHANNES NAZARYAN, Pro Se,<br>Defendant | Case No.: 1:25-bk-10617-MB<br><br>Adv. Proc. No.: 1:25-ap-01058-MB<br><br>Chapter 7<br><br>Hon. Martin R. Barash<br><br>DECLARATION OF HOVHANNES NAZARYAN IN SUPPORT OF DEBTOR'S MOTION TO SET ASIDE DEFAULT (28 U.S.C. § 1746; LBR 9013-1(I)) |

I, Hovhannes Nazaryan, declare as follows:

1. I am the Debtor in Case No. 1:25-bk-10617-MB and the Defendant in Adversary Proceeding No. 1:25-ap-01058-MB. I am appearing in this adversary proceeding Pro Se. I have personal knowledge of the facts stated in this Declaration, except where I state that I am informed and believe, and if called as a witness I could and would testify competently to them.

2. I make this Declaration in support of my Motion to Set Aside Default ("Motion"), filed concurrently.

3. Because of my incarceration, I have very limited legal resources, limited communication with assistance, and rely on a sometimes very slow prison mail system. I humbly request the Court's patience and understanding.

4. I have been incarcerated since before April 14, 2025, the date I filed my chapter 7 petition. I remain incarcerated at FCI Texarkana, Satellite Prison Camp. My Bureau of Prisons Register Number is 86590-509. My mailing address is P.O. Box 9300, Texarkana, TX 75505. My scheduled release date to prerelease is September 28, 2026.

5. After the above-mentioned bankruptcy petition was filed, my then-counsel, Anita Khachikyan, sent me papers to sign. I did not receive from counsel a clear, timely explanation of the Chapter 7 Trustee's document demands, their deadlines, or what would happen if I did not respond. I was not in a position to review the Trustee's requests in full or to assemble the records she asked for from camp.

6. I later learned that my then-counsel told this Court, in substance, that because of my incarceration I had extremely limited access to documents and significantly restricted communication with counsel, and that this impaired my ability to participate in the administration of the estate. A true and correct copy of the relevant page of the Motion to Dismiss Chapter 7 Case filed as Docket No. 69 in the main case is attached to the Motion as Exhibit E.

**The April 2025 lockout and my resulting distrust of the Trustee**

7. Before and after the petition date, I had given permission for Ani Verdiyan and Zarik Minasyan to be at 24366 La Masina Court, Calabasas, California 91302 (the "Calabasas property"). They had authorized access through the gated community's guest list.

8. I am informed and believe, and on that basis allege, that on or about April 17, 2025, Chapter 7 Trustee Nancy Hoffmeier Zamora, or persons acting at her direction, removed Ani Verdiyan and Zarik Minasyan from the guest list and deactivated their transponders, which prevented them from entering the Calabasas property. I did not receive prior notice that this would be done. No eviction case against me, and no completed eviction of the occupants, had occurred at that time.

9. I am informed and believe that on or about April 17, 2025 a Thirty-Day Notice of Termination of Occupancy was served, and that on or about April 22, 2025 a Notice of Belief of Abandonment was served, after the occupants had already been locked out. True and correct copies of documents and correspondence concerning the lockout and those notices are attached to the Motion as Exhibit B.

10. I am informed and believe that after the lockout the Trustee required photo identification, travel documents, utility bills, and signed papers before the occupants would be allowed back in or allowed to retrieve belongings, and that she stated she needed "assurances" before allowing access. True and correct copies of emails between the Trustee and my then-counsel dated April 18, 2025 through May 11, 2025 are attached to the Motion as Exhibit A.

11. I learned of the lockout and of those conditions while I was (and remain) incarcerated and unable to go to the property or speak with the Trustee in person. I understood the lockout as the Trustee acting first and asking questions later, while I was locked up and could not protect the house or the people I had allowed to be there. After that, I did not trust the Trustee and I was not willing to deal with her directly.

12. I did not refuse to participate in this case in order to hide assets or to delay the United States Trustee. I did not answer because I was incarcerated, I had almost no working communication with counsel, and I did not trust the Trustee after the lockout.

**Joint ownership and later Trustee action**

13. At the time of the April 17, 2025 lockout, I held title to the Calabasas property with Artur Nazaryan as joint tenants. Artur was not a debtor in my chapter 7 case. I did not consent to the lockout, and I am informed and believe that Artur did not consent either.

14. I later learned that on April 20, 2025, three days after the lockout, the Trustee filed a complaint against Artur Nazaryan, Adv. No. 1:25-ap-01025-MB, stating that Artur held title as a joint tenant with me. A true and correct copy of pages 3 and 4 of that complaint is attached to the Motion as Exhibit F.

**Trustee demands I could not meet while being incarcerated**

15. I am informed and believe that on or about May 1, 2025, the Trustee sent my then-counsel a long list of document requests, including years of tax returns, contact information for attorneys and realtors going back to 2015, and lists of personal property and transfers. Those emails are part of Exhibit A.

16. I am informed and believe that on or about May 11, 2025, the Trustee sent a further demand concerning the Coldwater Canyon property. That email is also part of Exhibit A.

17. I did not receive those demands in a form and at a time that allowed me to understand them and respond while incarcerated. I was not able to appear at the section 341(a) meeting. I was not able to gather and produce the volume of records the Trustee requested.

**Coldwater Canyon sale**

18. The Coldwater Canyon property was sold on or about January 2, 2025, for $1,980,000. That sale took place before my bankruptcy petition. I undertook the sale with the advice of counsel. The property faced foreclosure risk.

19. From the sale proceeds, $25,000 was paid to the United States toward the restitution obligation in United States v. Hovhannes Nazaryan, Case No. 2:22-cr-00041-JAK. The July 3, 2024 sentencing order in that case required payment of $1,289,264.94 in restitution and held me jointly and severally liable with Artur Nazaryan.

20. I am informed and believe that on or about October 2, 2024, Assistant United States Attorney Robert Lester confirmed that the United States would accept $25,000 in exchange for a partial release of the restitution lien on the Coldwater Canyon property. True and correct copies of documents concerning that sale and the $25,000 payment are attached to the Motion as Exhibit C.

21. I did not conceal the Coldwater Canyon sale from the United States. The government knew of the property, negotiated the partial lien release, and received $25,000 from the proceeds.

**What I know about the Trustee's access to the Calabasas property**

22. I am informed and believe that after the petition date the Trustee retained a real-estate broker, that agents acting in connection with the estate accessed the Calabasas residence, and that the Trustee obtained escrow and title records for Coldwater Canyon. Photographs of the home and its contents were publicly available on Zillow.

23. I later reviewed page 3 of the Trustee's Final Account and Distribution Report filed as Docket No. 144 in the main case. That page reports $1,000 recovered for "Household Goods." A true and correct copy of that page is attached to the Motion as Exhibit D.

24. I did not conceal the Calabasas house or the personal property inside it. The Trustee and her agents had access to the property and to public and title records.

**The default and this motion**

25. I am informed and believe that default was entered against me in this adversary proceeding on December 9, 2025. I was incarcerated then and I am incarcerated now. I could not monitor the docket myself and had very limited communication with then-counsel Anita Khachikyan.

26. I did not ignore this adversary proceeding in bad faith. As soon as I was able to obtain third-party clerical assistance to prepare papers while incarcerated, I directed that this Motion and this Declaration be prepared so that I can defend the section 727 claims on the merits.

27. I, first, through clerical assistance, had tried to file an earlier version of this motion at the clerk's office of this Court on or about July 1, 2026.

28. I am informed and believe that when attempting to file this earlier version of this motion, my assistance was told by Court staff both that I could not sign via a clerical assistant proxy, even if such assistant was authorized via a separate declaration signed by me, and I was also told that I could not file while my then-counsel Anita Khachikyan was the attorney of record on the main bankruptcy case (I was informed that this was what my assistance believed was conveyed to them).

29. Because I had reason to believe–though, incorrectly–that I was not able to file while my then-counsel was still listed on the docket of the main case, I switched my efforts to request the withdrawal of then-counsel Anita Khachikyan. Shortly after the failed filing attempt, I began attempts to contact Anita, establishing contact in mid-late July.

30. On August 10, 2026, Anita Khachikyan filed a Motion To Substitute Attorney in order to withdraw as counsel. (Dkt. 146, 1:25-bk-10617-MB).

31. On August 27, 2026, this court entered an Order Continuing Hearing (Adv. Dkt. 15, 1:26-ap-01031-MB) stating that "Ms. Khachikyan is Defendant's counsel of record in the bankruptcy case only. Defendant is self-represented in this adversary proceeding, and in the other adversary proceeding referenced in his letter (Adv. No. 1:25-ap-01058-MB)."

32. Immediately following this filing, which I had learned through assistance via PACER, I requested a new version–this motion–to be sent to me so that I could review and sign it, and I directed assistance to apply for this Court's Electronic Drop Box for this case.

33. I humbly ask this Court to consider the reasons above–including my misunderstanding about my ability to file, and my incarceration–in regards to my delay in filing this motion.

34. I have defenses I intend to present if the default is set aside, including that any failure to turn over records or appear must be judged against my incarceration and broken communication with counsel; that the Coldwater Canyon sale was done with counsel, with notice to the United States, and with a $25,000 restitution payment the government accepted; and that the Trustee already had independent access to the Calabasas property and to records of the estate.

Authentication of exhibits

28. I have reviewed the exhibits attached to the Motion. To the best of my knowledge:

a. Exhibit A is a true and correct copy of emails between Chapter 7 Trustee Nancy Zamora and Anita Khachikyan dated April 18, 2025 through May 11, 2025.

b. Exhibit B is a true and correct copy of documents and correspondence concerning the April 17, 2025 lockout and the later occupancy and abandonment notices.

c. Exhibit C is a true and correct copy of documents concerning the Coldwater Canyon sale and the $25,000 restitution payment.

d. Exhibit D is a true and correct copy of page 3 of the Trustee's Final Account and Distribution Report filed as Docket No. 144 in Case No. 1:25-bk-10617-MB.

e. Exhibit E is a true and correct copy of page 4 of the Motion to Dismiss Chapter 7 Case filed as Docket No. 69 in Case No. 1:25-bk-10617-MB.

f. Exhibit F is a true and correct copy of pages 3 and 4 of the complaint filed April 20, 2025 in Adv. No. 1:25-ap-01025-MB.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated this 8th day of September, 2026.

[signature]

Hovhannes Nazaryan, Pro Se

Hovhannes Nazaryan
Debtor, Pro Se
Register No. 86590-509
FCI Texarkana Satellite Camp
P.O. Box 9300
Texarkana, TX 75505

**Exhibit** A – Emails Between Chapter 7 Trustee Nancy Zamora and Anita Khachikyan (April 18 – May 2025)

**From:** Zamora & Hoffmeier <zamora3@aol.com>
**Sent:** Friday, April 18, 2025 4:40:29 PM
**To:** ak khachlaw.com <ak@khachlaw.com>; Brad Sures <bsures@sureslaw.com>; Cynthia Casas <c_casas24@yahoo.com>; behnaztavakoli@aol.com <behnaztavakoli@aol.com>
**Subject:** Re: In re Hovhannes Nazaryan, Chapter 7 Bankruptcy Case No. 1:25-bk-10617-MB; 24366 La Masina Court, Calabasas, CA

Anita:

Where are Ani and Zarik now?

Can I see images of their photo i.d.'s?

Can I see copies of airline tickets/reservations that one or both of them are leaving the country on Monday?

Can I see copies of utility bills for the property?

Will they sign the forms I emailed to you?

Please advise.

Thanks,

Nancy

I need assurances before I allow access.

–

**From:** Zamora & Hoffmeier <zamora3@aol.com>
**Sent:** Friday, April 18, 2025 5:57:07 PM
**To:** ak khachlaw.com <ak@khachlaw.com>; behnaztavakoli@aol.com <behnaztavakoli@aol.com>; Cynthia Casas <c_casas24@yahoo.com>; Brad Sures <bsures@sureslaw.com>
**Subject:** Re: In re Hovhannes Nazaryan, Chapter 7 Bankruptcy Case No. 1:25-bk-10617-MB; 24366 La Masina Court, Calabasas, CA

Anita:

I note that the So. Cal. Gas account was only placed in her name on March 14 (see reference to opening bill).

Have they provided answers to my other questions?

Nancy

On Friday, April 18, 2025 at 05:39:47 PM PDT, ak khachlaw.com <ak@khachlaw.com> wrote:

> Here are two bills.
>
> Anita Khachikyan
> Attorney at Law
> Khach Law Group, PC
> 126 S. Jackson St Suite 203
> Glendale, CA 91205
> Tel. 818-243-8500
> Fax. 866-577-6740
> Ak@khachlaw.com
> Www.khachlaw.com

**From:** Zamora & Hoffmeier <zamora3@aol.com>
**Sent:** Friday, April 18, 2025 19:53
**To:** ak khachlaw.com <ak@khachlaw.com>; Brad Sures <bsures@sureslaw.com>; behnaztavakoli@aol.com <behnaztavakoli@aol.com>
**Subject:** Re: In re Hovhannes Nazaryan, Chapter 7 Bankruptcy Case No. 1:25-bk-10617-MB; 24366 La Masina Court, Calabasas, CA

Anita:

I note that this is another bill commencing March 14, 2025.

I don't have any answers on if and when they will sign the forms (see attached--I corrected the spelling of Ani's surname).

I need a specific confirmed appointment for them to remove their personal property tomorrow and to sign the original forms with my realtor (2 p.m. and after for up to 4 hours).

Their lack of confirmation is causing me doubt as to their sincerity.

I still don't have copies of their photo i.d.'s.

I still don't have copies of the airline ticket/reservation.

I still don't have a list of the items they are removing.

I will not consider adding Zarik as an authorized temporary visitor until I receive these answers.

Nancy Zamora
Chapter 7 Trustee

**From:** Zamora & Hoffmeier <zamora3@aol.com>
**Sent:** Thursday, May 1, 2025 12:45 PM
**To:** ak khachlaw.com <ak@khachlaw.com>
**Cc:** Cynthia Casas <c_casas24@yahoo.com>; Escobar Eryk R. (USTP) <eryk.r.escobar@usdoj.gov>
**Subject:** In re Hovhannes Nazaryan, Chapter 7 Bankruptcy Case No. 1:25-bk-10617-MB; 24366 La Masina Court, Calabasas, CA

Anita:

Thank you for our call yesterday.

Per your request, this email provides a list of all outstanding requests to you and your client in the above-referenced case and some additional requests to be satisfied by the 341(a) meeting on May 14, 2025:

1. Confirm how Debtor will appear for the 341(a) meeting on May 14 at 11:30 a.m. and if any special arrangements need to be made. The meeting can be moved later in the day if more convenient for the prison personnel who may have to be involved.

2. Provide real property insurance documentation for the Calabasas property or confirm that Debtor failed to insure the property. Based on your prior communication to me, I obtained liability and hazard insurance for the property.

3. Confirm whether Debtor's guests have vacated and removed their personal property from the Calabasas property.

4. Provide a list of all assets of Debtor not included in the original schedules. Specifically, but without limitation, these previously undisclosed assets may include bank accounts, vehicles, retirement funds, investment accounts, cryptocurrency, collectibles, antiques, artwork, cash and currency.

5. Provide a detailed list of all household goods, furnishings, collectibles, antiques, artwork, clothing, shoes, and other personal property at the Calabasas property.

6. Provide any and all real property and financial documents related to the Calabasas property and liens secured by the property. Provide mortgage statements from Amwest Funding or its servicer. Provide HOA statements. Provide property tax bills.

7. Provide five years of federal and state tax returns.

8. Provide detailed information about, and documents related to, Debtor's purchase and subsequent sale/transfer of that certain real property located at 3351 Coldwater Canyon Avenue, Studio City, California 91604-4039. This should include all transfer deeds, escrow documents, debt secured by liens recorded against the real property, the identity and contact information for the party that transferred this property to Debtor and how that party is related to Debtor, the identity and contact information for the party to which Debtor transferred this property and how that party is related to Debtor, the identity and contact information for all title companies, escrow companies, realtors and attorneys related to these two transfers. (I attach a property profile and current preliminary title report.)

9. Provide the names and addresses of Debtor's current and former spouses, if any, and any and all petition(s) for dissolution, marital settlement agreements, and other similar documents.

10. Provide the names, email addresses, telephone numbers, and addresses of all attorneys who have represented Debtor from 2015 until today.

11. Provide the names, email addresses, telephone numbers, and addresses of all realtors Debtor has engaged from 2015 until today.

12. List all transfers Debtor has made of real and personal property, including repossessions, sales, and transfers for no value, from 2020 until today.

13. Does Debtor have a safe in the Calabasas property? If so, where is it located, what is the combination or code, and what is stored in the safe?

14. Does Debtor have a safe deposit box? If so, where is it located and what is stored in the safe deposit box?

15. Is anyone in possession or control of any property of Debtor? If so, identify each such individual including full name, address, email address and telephone number.

Thank you,

Nancy Zamora, Esq.
Chapter 7 Trustee

**From:** Zamora & Hoffmeier <zamora3@aol.com>
**Sent:** Sunday, May 11, 2025 9:06 AM
**To:** ak khachlaw.com <ak@khachlaw.com>
**Subject:** In re Hovhannes Nazaryan, Chapter 7 Bankruptcy Case No. 1:25-bk-10617-MB

Anita:

This is a demand for turnover of all documents related to Debtor's purchase, financing, ownership and sale of that certain real property commonly known as 3351 Coldwater Canyon Avenue, Studio City, California 91604.

Public records show that Debtor purchased the property for $2.6 million in late 2023 and then sold it for only $1,980,000 in December 2024 (recorded 1/2/25) to Andrei Vanecian who currently has the same property listed for sale for $3.5 million.

Nancy Zamora
Chapter 7 Trustee

**Exhibit B** – Documents and Correspondence Related to April 17, 2025 Lockout of Occupants and Subsequent Eviction Notices

**From:** Zamora & Hoffmeier <zamora3@aol.com>
**Sent:** Thursday, April 17, 2025 11:38
**To:** ak khachlaw.com <ak@khachlaw.com>
**Cc:** behnaztavakoli@aol.com <behnaztavakoli@aol.com>; Cynthia Casas <c_casas24@yahoo.com>; Brad Sures <bsures@sureslaw.com>; Esq. Sanaz Bereliani <berelianilaw@gmail.com>
**Subject:** Re: 24366 La Masina Court, Calabasas, CA 91302; In re Hovhannes Nazaryan

Thank you.

All outstanding transponders (5) issued to Debtor have been de-activated. All permanent and temporary guests of the property have been removed.

Your name and office number will be provided by security to any friend or acquaintance of Debtor who attempts to gain entry and has questions about why entry is denied.

Nancy Zamora, Esq.
Chapter 7 Trustee

—

**From:** Zamora & Hoffmeier <zamora3@aol.com>
**Sent:** Thursday, April 17, 2025 8:22:54 PM
**To:** ak khachlaw.com <ak@khachlaw.com>
**Cc:** Cynthia Casas <c_casas24@yahoo.com>; behnaztavakoli@aol.com <behnaztavakoli@aol.com>; Brad Sures <bsures@sureslaw.com>; Esq. Sanaz Bereliani <berelianilaw@gmail.com>
**Subject:** In re Hovhannes Nazaryan, Chapter 7 Bankruptcy Case No. 1:25-bk-10617-MB; 24366 La Masina Court, Calabasas, CA

Anita:

Here are the 2 people at the property now according to security at the gated community:

"There are two people in the house Ani Verdiyan who is supposedly his wife and Zarik minasyan who her friend. "

Can you confirm? Isn't Debtor single? Perhaps she is actually his "girlfriend" as you and I discussed.

Thanks,

Nancy

**4 Attachments** • Scanned by Gmail Add all to Drive


Ani Verdyan.ACK...


Ani Verdyan.NOTI...


Zarik Minasyan.N...


Zarik Minasyan.A...

ZAMORA & Hoffmeier
a Professional Corporation
633 West 5th Street, Suite 2600
Los Angeles, CA 90071

April 17, 2025

*Ani* Verdyan and
All Other Occupants
24366 La Masina Court
Calabasas, CA 91302

**RE: THIRTY DAY NOTICE OF TERMINATION OF OCCUPANCY**

To: *Ani Verdyan and All Other Occupants:*

The undersigned is the duly-qualified, appointed and acting Chapter 7 Trustee ("Trustee") for the Chapter 7 Bankruptcy case ("Estate") of debtor Hovhannes Nazaryan ("Debtor"), who is the owner of certain real property commonly known as 24366 La Masina Court, Calabasas, California 91302 ("Premises"). I am informed that you might be currently occupying the Premises as a guest or invitee of Debtor.

In this regard, pursuant to Civil Code, Section 1946.1(c), **this letter shall serve as thirty-day notice of the termination of your occupancy**. In this regard, your tenancy/occupancy shall terminate as of 11:59 p.m. on May 19, 2025.

You are therefore required to quit and deliver possession of the Premises and turning over the keys to the Premises to Trustee, by no later than 12:00, noon, May 20, 2025. Failure to do so shall result in legal proceeding being brought against you for your unlawful detention of the Premises.

Date: April 17, 2025 BY: Nancy J. Zamora
Nancy J. Zamora, Chapter 7 Trustee for
Hovhannes Nazaryan, 1:25-bk-10617-MB

Be advised that "ANY PERSON OR PERSONS WHO WILLFULLY OR MALICIOUSLY *DESTROYS OR DAMAGES ANY REAL OR PERSONAL* PROPERTY NOT THEIR OWN WILL BE PUNISHED BY FINE OR IMPRISONMENT OR BOTH."

Please be advised that "State law permits former tenants to reclaim abandoned personal property left at the former address of the tenant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact your former landlord after being notified that property belonging to you was left behind after you moved out."

see attached notice of belief of abandonment that was mailed to you

Law Office of
BRAD S. SURES
10803 Gloria Avenue
Granada Hills, CA 91344
(818) 363-9991 Fax (818) 363-0220

April 22, 2025

Ani Verdyan, Zarik Minasyan
All Other Occupants
24366 La Masina Court
Calabasas, CA 91302

**NOTICE OF BELIEF OF ABANDONMENT**

My Client: Nancy J. Zamora, Trustee the Chapter 7 Bankruptcy Estate of Debtor Hovhannes Nazaryan ("Debtor")

Leasehold Premises: 24366 La Masina Court, Calabasas, CA 91302

This notice is given concerning the real property which you may have occupied located at 24366 La Masina Court, Calabasas, California 91302.

The real property will be deemed abandoned within the meaning of Section 1951.2 of the Civil Code and your occupancy will terminate on May 9, 2025, unless before that date the undersigned receives at the address indicated below, a written notice from you stating both of the following:

1. Your intent not to abandon the real property.

2. The address to which you may be served by certified mail in any action for unlawful detainer of the real property.

DATED: April 22, 2025

LAW OFFICE OF BRAD S. SURES

BY: Brad S Sures
BRAD S. SURES
10803 Gloria Avenue
Granada Hills, CA 91344
Attorney for Nancy J. Zamora,
Trustee for the Chapter 7 Bankruptcy
Estate of Debtor Hovhannes Nazaryan

**ACKNOWLEDGMENT OF REMOVAL OF PERSONAL PROPERTY**

I, Ani Verdiyan, was a guest of the premises located at 24366 La Masina Court, Calabasas, California 91302 ("Premises"), but never had occupancy of the Premises. To the extent I had any personal property and/or furnishings in the Premises ("Personal Property"), I have removed or caused to be removed any such Personal Property from the Premises and I make no claim to any other Personal Property remaining in the Premises.

DATED: ___________________________ BY: _______________________________
Ani Verdiyan

**NOTICE OF RELINQUISHMENT OF POSSESSION OF PREMISES**

I, Ani Verdiyan, a guest of the premises located at 24366 La Masina Court, Calabasas, California 91302 ("Premises"), hereby confirm that I make no claim of any right to possession of Premises. I acknowledge that the keys and all means of access to the Premises have also been surrendered to the Chapter 7 Trustee for the Chapter 7 Bankruptcy Estate of Debtor Hovhannes Nazaryan.

It is herein acknowledged and agreed that to the extent I had any personal property or furnishings ("Personal Property") in the Premises, I have removed such Personal Property and make no claim to any other personal property in the Premises.

GUEST:

BY: ______________________________
ANI VERDIYAN

DATED: ______________________

**ACKNOWLEDGMENT OF REMOVAL OF PERSONAL PROPERTY**

I, Zarik Minasyan, was a guest of the premises located at 24366 La Masina Court, Calabasas, California 91302 ("Premises"), but never had occupancy of the Premises. To the extent I had any personal property and/or furnishings in the Premises ("Personal Property"), I have removed or caused to be removed any such Personal Property from the Premises and I make no claim to any other Personal Property remaining in the Premises.

DATED: ____________________________ BY: ________________________________
Zarik Minasyan

**NOTICE OF RELINQUISHMENT OF POSSESSION OF PREMISES**

I, Zarik Minasyan, a guest of the premises located at 24366 La Masina Court, Calabasas, California 91302 ("Premises"), hereby confirm that I make no claim of any right to possession of Premises. I acknowledge that the keys and any other means to the Premises have also been surrendered to the Chapter 7 Trustee for the Chapter 7 Bankruptcy Estate of Debtor Hovhannes Nazaryan.

It is herein acknowledged and agreed that to the extent I had any personal property or furnishings ("Personal Property") in the Premises, I have removed such Personal Property and make no claim to any other personal property in the Premises.

GUEST:

BY: ______________________________
ZARIK MINASYAN

DATED: ______________________

ESCROW

**Chartwell Escrow, Inc.**
14140 Ventura Boulevard
Suite 110
Sherman Oaks, CA 91423
(818) 995-2580

# Seller's Final Closing Statement

| | | | | | |
|---|---|---|---|---|---|
| **Property** | 3351 Coldwater Canyon Avenue<br>Studio City, CA 91604 | **Escrow Officer** | Peter O. Jett | **Prepared** | 02/23/2026 |
| | | **Seller** | Hovhannes Nazaryan | **Closing** | 01/02/2025 |
| **Escrow #** | CW-PJ-1289 | | | **Disbursement Date** | 01/02/2025 |
| **Title #** | E119424 | | | **Title by** | Priority Title Company |

| | Debit | Credit |
|---|---|---|
| **Primary Charges & Credits** | | |
| Sale Price of Property | | $1,980,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes ($1,271.77) 01/01/2025 to 01/02/2025 | $7.07 | |
| County Taxes ($1,907.35) 01/01/2025 to 01/02/2025 | $10.60 | |
| County Taxes ($12,772.74) 01/01/2025 to 01/02/2025 | $70.96 | |
| | | |
| **Payoffs/Payments** | | |
| Payoff to United States | $25,000.00 | |
| Principal : $25,000.00 | | |
| Payoff to Los Angeles Police Federal Credit Union | $55,000.00 | |
| Principal : $55,000.00 | | |
| Payoff to AmWest Funding Corp | $1,838,453.58 | |
| Principal : $1,823,771.68 | | |
| Property Tax Reimbursement: $14,681.90 | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Recording Fee - Seller Documents | $355.00 | |
| City Transfer Tax (Deed) to Los Angeles County Recorder | $8,910.00 | |
| County Transfer Tax (Deed) to Los Angeles County Recorder | $2,178.00 | |
| | | |
| **Commissions** | | |
| Listing Agent Commission to Century Max Realty | $17,000.00 | |
| | | |
| **Title Charges** | | |
| Electronic Recording Fee to Priority Title Company | $15.00 | |
| Inspection Fee to Priority Title Company | $55.00 | |
| Sub-Escrow Fee to Priority Title Company | $67.50 | |
| Wire Fee to Priority Title Company | $30.00 | |
| Owner's Policy to Priority Title Company | $3,921.00 | |
| | | |
| **Escrow Charges** | | |
| City Report Reimbursement to Chartwell Escrow, Inc. | $72.76 | |
| Digital Archiving Fee to Chartwell Escrow, Inc. | $55.00 | |
| Document Preparation to Chartwell Escrow, Inc. | $200.00 | |
| Escrow Courtesy Credit to Chartwell Escrow, Inc. | | $564.16 |
| Messenger/Overnight to Chartwell Escrow, Inc. | $75.00 | |
| Payoff Processing to Chartwell Escrow, Inc. | $300.00 | |
| Settlement or Closing Fee to Chartwell Escrow, Inc. | $4,460.00 | |
| State Withholding Assistance to Chartwell Escrow, Inc. | $22.50 | |
| Wire Fee to Chartwell Escrow, Inc. | $30.00 | |

| | Debit | Credit |
|---|---|---|
| **Miscellaneous Charges** | | |
| 1st 1/2 2023/24 Property Taxes + Pen to Los Angeles County Tax Collector | $2,098.11 | |
| 1st 1/2 24/25 Property Taxes + Pen to Los Angeles County Tax Collector | $14,050.03 | |
| 1st 1/2 24/25 Property Taxes + Pen to Los Angeles County Tax Collector | $1,398.96 | |
| Fire Dept Invoice to Los Angeles Fire Department | $34.00 | |
| Fire Dept Invoice to Los Angeles Fire Department | $764.00 | |
| Fire Dept Invoice to Los Angeles Fire Department | $34.00 | |
| Fire Dept Invoice to Los Angeles Fire Department | $764.00 | |
| Fire Dept Invoice to Los Angeles Fire Department | $34.00 | |
| Fire Dept Invoice to Los Angeles Fire Department | $111.13 | |
| Fire Dept Invoice to Los Angeles Fire Department | $764.00 | |
| Property Disclosure Report to MyNHD, Inc. | $80.00 | |
| Supplemental Taxes to Los Angeles County Tax Collector | $200.44 | |
| Supplemental Taxes to Los Angeles County Tax Collector | $454.90 | |
| Supplemental Taxes to Los Angeles County Tax Collector | $3,347.62 | |
| Wildfire Disclosure Invoice to MyNHD, Inc. | $140.00 | |
| | **Debit** | **Credit** |
| **Subtotals** | **$1,980,564.16** | **$1,980,564.16** |
| Due from Seller | | $0.00 |
| **Totals** | **$1,980,564.16** | **$1,980,564.16** |

10. The defendant shall apply all monies received from income tax refunds, lottery winnings, inheritance, judgments and any other financial gains to the Court-ordered financial obligation.

11. The defendant shall submit the defendant's person, property, house, residence, vehicle, papers, computers, cell phones, other electronic communications or data storage devices or media, email accounts, social media accounts, cloud storage accounts, or other areas under the defendant's control, to a search conducted by a United States Probation Officer or law enforcement officer. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search pursuant to this condition will be conducted at a reasonable time and in a reasonable manner upon reasonable suspicion that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation.

12. The defendant shall possess and use only those digital devices, screen usernames, email accounts, social media accounts, messaging applications, and cloud storage accounts, as well as any passwords or passcodes for all such digital devices and accounts, that have been disclosed to the Probation Officer upon commencement of supervision. Any new devices, accounts, applications, passwords, or passcodes are to be disclosed to the Probation Officer prior to the first use. A digital device is any electronic system or device that can access, view, obtain, store, or transmit digital data related to bank account information.

13. All computers, computer-related devices, and their peripheral equipment, used by the defendant shall be subject to search, seizure and computer monitoring. This shall not apply to items used at the employment site that are maintained and monitored by the employer.

14. The defendant shall comply with the rules and regulations of the Computer Monitoring Program. The defendant shall pay the cost of the Computer Monitoring Program.

The Court authorizes the Probation & Pretrial Services Office to disclose the Revised Presentence Report to the substance abuse treatment provider to facilitate the defendant's treatment for narcotic addiction or drug dependency. Further redisclosure of the Revised Presentence Report by the treatment provider is prohibited without the consent of the sentencing judge.

It is ordered that the defendant shall pay to the United States a special assessment of $100, which is due immediately. Any unpaid balance shall be due during the period of imprisonment, at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.

It is ordered that the defendant shall pay restitution in the total amount of $1,289,264.94 pursuant to 18 U.S.C. § 3663A.

The amount of restitution ordered shall be paid as set forth on the list attached to this judgment. If the defendant makes a partial payment, each payee shall receive approximately proportional payments unless another priority order or percentage payment is specified.

Restitution shall be paid in full within 120 days of sentencing. The Court finds from a consideration of the record that the defendant's economic circumstances allow for a full and immediate payment of restitution.

The defendant shall be held jointly and severally liable with co-participant, Artur Nazaryan (Docket No. CR- 2:22CR00041-2) for the amount of restitution ordered in this judgment.

The victims' recovery is limited to the amount of their loss and the defendant's liability for restitution ceases if and when the victims receive full restitution.

Pursuant to 18 U.S.C. § 3612(f)(3)(A), interest on the restitution ordered is waived because the defendant does not have the ability to pay interest. Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The defendant shall comply with Second Amended General Order No. 20-04.

Pursuant to Guideline § 5E1.2(a), all fines are waived as the Court finds that the defendant has established that he is unable to pay and is not likely to become able to pay any fine.

The Court has found that the property identified in the preliminary order of forfeiture is subject to forfeiture. The preliminary order is incorporated by reference into this judgment and is final.

The Court recommends that the defendant be considered for participation in the Bureau of Prison's Residential Drug Abuse Program (RDAP).

**From:** "Lester, Robert (USACAC)" <Robert.Lester@usdoj.gov>
**Date:** Wednesday, October 2, 2024 at 3:37 PM
**To:** Craig Missakian <craig@cmlawpartners.com>
**Subject:** RE: Artur and Hovhannes Nazaryan Restitution Issues

Hovhannes Nazaryan

a. La Masina

The government will accept the $25,000.00 previously offered. The government will, upon receipt of funds, record a partial release of the restitution lien; it will be with respect to this property only. Please ask escrow to email a request for demand to me. Please note that I will be unavailable tomorrow and Friday.

b. Coldwater Canyon

The government will accept the $25,000.00 previously offered. The government will, upon receipt of funds, record a partial release of the restitution lien; it will be with respect to this property only.

I note the obvious: That even if all three of these transactions work, both defendants will not have come close to meeting the required partial payment ordered by the Court. How do they plan to deal with that problem?

Thanks,

Bob Lester

**ROBERT I. LESTER**
Assistant United States Attorney
United States Attorney's Office
Asset Forfeiture and Recovery Section
312 N. Spring Street, 11th Floor
Los Angeles, CA 90012
P: (213) 894-3802
F: (213) 894-6269
robert.lester@usdoj.gov

Exhibit D –Chapter 7 Trustee’ s Final Account and Distribution Report (Docket 144), page 3

## EXHIBITS TO
## FINAL ACCOUNT

### EXHIBIT 1 – GROSS RECEIPTS

| DESCRIPTION | UNIFORM TRAN. CODE[1] | $ AMOUNT RECEIVED |
|---|---|---|
| Residential real property | 1110-000 | 119,000.00 |
| Household Goods | 1129-000 | 1,000.00 |
| Refunds | 1229-000 | 1.48 |
| Potential avoidance actions | 1241-000 | 5,000.00 |
| **TOTAL GROSS RECEIPTS** | | **$**125,001.48 |

[1]The Uniform Transaction Code is an accounting code assigned by the trustee for statistical reporting purposes.

### EXHIBIT 2 – FUNDS PAID TO DEBTOR & THIRD PARTIES

| PAYEE | DESCRIPTION | UNIFORM TRAN. CODE | $ AMOUNT PAID |
|---|---|---|---|
| Hovhannes Nazaryan | Exemptions | 8100-002 | 1,000.00 |
| **TOTAL FUNDS PAID TO DEBTOR & THIRD PARTIES** | | | **$**1,000.00 |

### EXHIBIT 3 – SECURED CLAIMS

| CLAIM NO. | CLAIMANT | UNIFORM TRAN. CODE | CLAIMS SCHEDULED (from Form 6D) | CLAIMS ASSERTED | CLAIMS ALLOWED | CLAIMS PAID |
|---|---|---|---|---|---|---|
| | AmWest Funding Corp, 6 Pointe Drive Suite 300 Brea, CA 92821 | | 3,000,000.00 | NA | NA | 0.00 |

Exhibit E –Motion to Dismiss Chapter 7 Case (Docket 69), page 4

creditors while he is incarcerated and was facing a foreclosure. Due to his incarceration, Debtor has had extremely limited access to documents and significantly restricted communication with counsel. This has impaired Debtor's ability to meaningfully participate in the administration of the estate.

The estate's principal asset is a residential property in which the Debtor's brother holds a 50% interest. The brother is also incarcerated and unable to defend an adversary proceeding initiated by the Trustee seeking to obtain his interest. He is scheduled for release at the end of July 2025, at which point he intends to take active steps to defend his rights in the property. He has also retained a real estate agent that has agreed to reduce commission fees, ensuring more proceeds are preserved for the benefit of the creditors.

Meanwhile, the Trustee's litigation against the brother, who lacks the resources or ability to defend himself, has increased administrative expenses and legal fees, consuming estate assets and diminishing potential distributions.

**UNDER 11 USC SECTION 707(a) A DEBTOR MAY MOVE TO DISMISS A CHAPTER 7 CASE FOR "CAUSE."**

A chapter 7 bankruptcy case may be dismissed "only for cause." 11 U.S.C. § 707(a). Section 707(a) lists examples of "cause", none of which apply here, which are: unreasonable delay prejudicial to creditors, nonpayment of filing fees, and not filing schedules—that is plainly incomplete. *Neary v. Padilla* (*In re Padilla*), 222 F.3d 1184, 1191 (9th Cir. 2000). "If there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question becomes whether the totality of circumstances amount to § 707(a) 'cause.'" *Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 970 (9th Cir. 2007*); Leach v. United States (In re Leach)*, 130 B.R. 855, 856 (9th Cir. BAP 1991). "The law in the Ninth Circuit is clear: a voluntary Chapter 7 debtor is entitled to dismissal of his [or her] case so long as such dismissal will cause no



KHACH LAW GROUP, PC
126 S Jackson St. Suite 203
Glendale, CA 91205
Tel: (818) 243.8500
Fax: (866) 577.6740

Exhibit F –Complaint Against Artur Nazaryan (1:25-ap-01025-MB, filed April 20, 2025), pages 3 -4 only (Joint Tenancy Ownership) –1

proceeding arises under Title 11 or arises in or relates to a case under Title 11 which is pending in this district and does not involve an attempt to recover property worth less than $1,725.00,[1] or a consumer debt of less than $25,700.00.[2]

4. This adversary proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure 7001(3) (a proceeding to obtain approval under § 363(h) for sale of both the interest of the estate and of a co-owner in property).

5. Plaintiff, as Chapter 7 Trustee in this Bankruptcy Case, has standing to bring this action under 11 U.S.C. § 323.

## II. PARTIES

6. Plaintiff is the duly-appointed, qualified and acting Chapter 7 Trustee for the Estate, and brings the claims asserted herein in that capacity.

7. Plaintiff is informed and believes, and thereon alleges, that Defendant Artur Nazaryan, is an individual and is subject to the jurisdiction of this Court.

## III. GENERAL ALLEGATIONS

8. Plaintiff is informed and believes that on or around March 29, 2023, Defendant Artur Nazaryan, a single man, and Debtor Hovhannes Nazaryan, s single man, acquired title to the real property located at 24366 La Masina Court, Calabasas, California 91302; Los Angeles County APN: 2069-033-066 (the “Real Property”) as joint tenants (the “Joint Tenancy”) by that certain Grant Deed recorded as instrument no. 20220010067 in Official Records, Recorder’s Office, Los Angeles County, California (the “Grant Deed”).

9. The Real Property is a single-family residence located in the County of Los Angeles, California and legally described in Exhibit A to this Complaint attached hereto and incorporated herein by reference.

10. Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 14, 2025 (the “Petition Date”), initiating the Bankruptcy Case.

---

[1] Dollar amount as adjusted by the Judicial Conference of the United States and set forth in 11 U.S.C. § 104.

[2] Dollar amount as adjusted by the Judicial Conference of the United States and set forth in 11 U.S.C. § 104.

Case 1:25-ap-01055-MB Doc 11 Filed 09/20/25 Entered 09/20/25 21:10:03 Desc
Main Document Page 34 of 37


11. As of the filing of the Bankruptcy Case, Debtor's interest as a joint tenant in the Real Property became property of the Estate under § 541 of the Bankruptcy Code.

12. Plaintiff was subsequently appointed as the Chapter 7 Trustee of the Estate.

13. Debtor listed the Real Property in his bankruptcy schedules.

14. Based on a preliminary evaluation of the Real Property by Plaintiff's broker, Plaintiff is informed and believes that the Real Property is a single-family residence, which has a fair market value of approximately $4,850,000.

15. Plaintiff is informed and believes, and thereon alleges, that either there is non-exempt equity for the Estate in the Real Property and/or value for the Estate from liquidation of the Real Property based on carve-outs for the benefit of the Estate negotiated between Plaintiff and one or more lien holders.

16. Based on a review of the real property records, Plaintiff is informed and believes that legal title is held by Defendant and Debtor as joint tenants.

17. Pursuant to 11 U.S.C. § 541, the filing of the Bankruptcy Case created an estate comprised of all legal or equitable interests of Debtor in property as of the commencement of the Bankruptcy Case. Accordingly, Debtor's interest as a joint tenant in the Real Property became property of the Estate upon the filing of the Bankruptcy Case.

18. If the Estate were to sell the Real Property, there would be sufficient equity and/or proceeds from negotiated "carve-outs" between Plaintiff and one or more lien holders to make a meaningful distribution to creditors based on the facts and circumstances of the Bankruptcy Case.

**FIRST CLAIM FOR RELIEF**

**Sale of Joint Tenancy of Real Property as Set Forth in Grant Deed**

**11 U.S.C. § 363(h)**

19. Plaintiff realleges and incorporates by this reference each and every allegation contained in Paragraphs 1 through 18, inclusive, of this Complaint as if set forth fully herein.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**200 W Milford St, Apt 534, Glendale, CA 91203**

A true and correct copy of the foregoing document entitled ***(specify):***
**Notice of Motion and Hearing on Debtor's Motion to Set Aside Default; Debtor's Motion to Set Aside Default; Declaration of Hovhannes Nazaryan in Support of Debtor's Motion to Set Aside Default; and Exhibits A through F**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 22, 2026, I checked the CM/ECF docket for this adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Brian David Fittipaldi, Trial Attorney**
U.S. Department of Justice
brian.fittipaldi@usdoj.gov

**United States Trustee (SV) / Region 16**
ustpregion16.wh.ecf@usdoj.gov

**Nancy J. Zamora, Chapter 7 Trustee**
nzamora@ecf.axosfs.com

**2. SERVED BY UNITED STATES MAIL:**
On (date) _______________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

*None. Official service is by overnight courier as set forth in paragraph 3.*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 21, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**A. Official service — Federal Express overnight (next-business-day delivery)**

**Brian David Fittipaldi, Attorney**
U.S. Department of Justice
1415 State Street
Santa Barbara, CA 93111
Tel.: (202) 834-1629
*FedEx Overnight Tracking: 877601585650*

**Nancy J. Zamora, Chapter 7 Trustee**
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, CA 90071
Tel.: (213) 488-9411
*FedEx Overnight Tracking: 877602176124*

**Hon. Martin R. Barash**
United States Bankruptcy Court
21041 Burbank Blvd., Suite 342
Woodland Hills, CA 91367
*FedEx Overnight Tracking: 877602548022*
*(Judge's courtesy copy under LBR 5005-2(d).)*

**B. Courtesy copies by email (not claimed as official service)**

A courtesy PDF of the same papers was also transmitted by email on September 22, 2026, to:

Brian David Fittipaldi — brian.fittipaldi@usdoj.gov
Nancy J. Zamora, Chapter 7 Trustee — zamora3@aol.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **Date:** | **Printed name:** | **Signature:** |
|---|---|---|
| September 22, 2026 | Zarik Minasyan | [signature] |